# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DONALD J. TRUMP FOR PRESIDENT, INC.,

        Plaintiff,

v.

MAGGIE TOULOUSE OLIVER, in her official
capacity as Secretary of State of New Mexico, the
ELECTORS of NEW MEXICO, and the STATE
CANVASSING BOARD OF NEW MEXICO,

        Defendants.

Case No. 1:20-cv-01289-MV

**PROPOSED INTERVENOR-DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY
INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................4

       A.     Factual Background.......................................................................................4

       B.     Procedural History ........................................................................................6

III.   LEGAL STANDARD .........................................................................................8

IV.    ARGUMENT ....................................................................................................9

       A.     The Trump Campaign cannot succeed on the merits. ...........................................11

              1.     There is no live controversy. ...............................................................12

              2.     The Trump Campaign's claims are barred by laches. ...............................13

              3.     The Court lacks jurisdiction. ...............................................................14

              4.     The Trump Campaign cannot succeed on the merits of its Electors Clause
                     claim. ...........................................................................................17

       B.     The Trump Campaign has not demonstrated irreparable harm. ...........................19

       C.     The balance of the equities and the public interest overwhelmingly favor denying
              the request for injunctive relief....................................................................23

V.     CONCLUSION ...............................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n,*
  576 U.S. 787 (2015) ............................................................................................. 17

*Bowyer v. Ducey,*
  No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) .................... passim

*Darr v. Vill. of Tularosa,*
  962 P.2d 640 (N.M. 1998) ................................................................................ 19, 24

*Dine Citizens Against Ruining Our Env't v. Jewell,*
  839 F.3d 1276 (10th Cir. 2016) ............................................................................ 9

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*
  356 F.3d 1256 (10th Cir. 2004) ............................................................................ 8

*Donald J. Trump for President, Inc. v. Benson,*
  No. 20-000225-MZ (Mich. Ct. Cl. Nov. 6, 2020) .................................................... 22

*Donald J. Trump for President, Inc. v. Boockvar,*
  2020 WL 6821992 (M.D. Pa. Nov. 21, 2020), *aff'd Donald J. Trump for*
  *President, Inc. v. Sec'y of Pa.*, 830 Fed. App'x 377 (3d Cir. Nov. 27, 2020) ................ passim

*Donald J. Trump for President Inc. v. Phila. Cnty. Bd. of Elections,*
  No. 2:20-CV-05533-PD, Doc. 5 (E.D. Pa. Nov. 5, 2020) ........................................ 22

*Dugan v. Rank,*
  372 U.S. 609 (1963) .......................................................................................... 15

*Feehan v. Wis. Elections Comm'n,*
  No. 20-CV-1771-PP, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) .............................. 11

*First W. Capital Mgmt. Co. v. Malamed,*
  874 F.3d 1136 (10th Cir. 2017) ........................................................................ 16, 19

*GTE Corp. v. Williams,*
  731 F.2d 676 (10th Cir. 1984) ............................................................................ 21

*In re: Enforcement of Election Laws and Securing Ballots Cast or Received After*
*7:00 P.M. on Nov. 3, 2020,*
   No. SPCV2000982-J3 (Ga. Sup. Ct., Nov. 5, 2020) ................................................22

*Johns v. Stewart,*
   57 F.3d 1544 (10th Cir. 1995) .........................................................................15, 16

*Kadonsky v. United States,*
   3 F. App'x 898 (10th Cir. 2001) ............................................................................13

*Kelly v. Commonwealth,*
   240 A.3d 1255 (Pa. 2020) ...............................................................................11, 13

*King v. Whitmer,*
   --- F.Supp.3d ---, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) .....................12, 16

*King v. Whitmer,*
   No. 20-cv-13134-LVP-RSW (E.D. Mich. Nov. 25, 2020).............................7, 10, 22

*Kraus v. Cegavske,*
   Order, No. 20-OC-00142 (Nev. Dist. Ct. Oct. 29, 2020) .......................................22

*Logan v. Pub. Emps. Ret. Ass'n,*
   163 F. Supp. 3d 1007 (D.N.M. 2016) .....................................................................20

*Page v. Oath, Inc.,*
   No. S20C-07-030 CAK ...........................................................................................10

*Pearson v. Kemp,*
   No. 20-cv-04809 (N.D. Ga. Nov. 25, 2020)...........................................................22

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) .................................................................................................15

*RPNM v. Oliver,*
   No. D-101-cv-2020-02344 (N.M. 1st Dist. Ct. Oct. 26, 2020) ................................5

*Schrier v. Univ. of Co.,*
   427 F.3d 1253 (10th Cir. 2005) ...............................................................................9

*Seminole Tribe of Fla. v. Fla.,*
   517 U.S. 44 (1996) .................................................................................................16

*Trump v. Benson*,
    No. 20-cv-1083 (W.D. Mich. Nov. 11, 2020) .......................................................22

*Trump v. Biden*,
    --- N.W.2d ---, 2020 WL 7331907 (Wis. Dec. 14, 2020)................................11, 14

*Trump v. Wisconsin Elections Comm'n*,
    No. 20-3414, 2020 WL 7654295 (7th Cir. Dec. 24, 2020) ....................14, 17, 18, 23

*United States v. Bacon*,
    900 F.3d 1234 (10th Cir. 2018) ..........................................................................23

*United States v. Classic*,
    313 U.S. 299 (1941) ...........................................................................................24

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) .............................................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................8

*Wisconsin Voters All. v. Vice President Michael R. Pence*,
    Case No. 20-3791 (JEB) (D.D.C. Jan. 4, 2021) ................................................3, 11

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ..................................................................12, 13, 14

*Wood v. Raffensperger*,
    No. 1:20-CV-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020),
    *aff'd*, No. 20-14418, 2020 WL 7094866 (11th Cir. Dec. 5, 2020)..........................11

## STATUTES

3 U.S.C. § 2 .................................................................................................................6

3 U.S.C. § 6 .................................................................................................................5

3 U.S.C. § 7 .................................................................................................................5

3 U.S.C. §§ 9-10 .........................................................................................................5

3 U.S.C. § 11 ...............................................................................................................7

3 U.S.C. § 15 ...........................................................................................................6, 8

N.M.S.A. § 1-2-1(B)(1) .................................................................................... 18

N.M.S.A. § 1-6-10.1 ....................................................................................... 10

N.M.S.A. § 1-12-72(O) ............................................................................ 18, 19

N.M.S.A. § 1-14-1 ....................................................................................... 6, 23

N.M.S.A. § 1-14-14 ..................................................................................... 6, 23

N.M.S.A. § 1-15-4 ............................................................................................ 17

N.M.S.A. § 1-15-5 .............................................................................................. 5

**OTHER AUTHORITIES**

Wright & Miller, 11A Federal Practice and Procedure, § 2948.1 (3d ed., Apr.
    2017 update) ............................................................................................ 21

U.S. Const. art. II, § 1, cl. 2 ............................................................................ 17

Proposed Intervenor-Defendant the DNC Services Corporation/Democratic National Committee (the "DNC") submits this opposition to the motion for preliminary injunctive relief filed by President Trump's re-election campaign, Donald J. Trump for President, Inc. (the "Trump Campaign").[1]

## I.     INTRODUCTION

The Trump Campaign moves for a mandatory injunction to undo the final results of New Mexico's presidential election. When faced with a similarly breathtaking request for relief from the Trump Campaign in its unsuccessful quest to undo Pennsylvania's presidential election, another federal district court wrote:

> One might expect that when seeking such a startling outcome, a plaintiff would come formidably armed with compelling legal arguments and factual proof of rampant corruption, such that this Court would have no option but to regrettably grant the proposed injunctive relief despite the impact it would have on such a large group of citizens.

> That has not happened. Instead, this Court has been presented with strained legal arguments without merit and speculative accusations, unpled in the operative complaint and unsupported by evidence. In the United States of America, this cannot justify the disenfranchisement of a single voter, let alone all the voters of its sixth most populated state. Our people, laws, and institutions demand more.

---

[1] The DNC's motion to intervene remains pending with the Court; the Trump Campaign filed an opposition to that motion today. However, the DNC advised the Court that, if permitted to intervene, they would abide by the Court's scheduling orders and not interpose any undue delay, and the DNC submits this opposition brief to comply with the schedule for briefing on Plaintiff's motion for preliminary injunctive relief as set by the Court [Doc. 17].

*Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020), *aff'd Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 Fed. App'x 377 (3d Cir. Nov. 27, 2020). That order issued three weeks before the Trump Campaign even *initiated* this case.

In the interim, numerous courts have made reiterated these sentiments in dismissing similar challenges by the Trump Campaign and its allies. For example, when faced with an attempt to undo Arizona's election, another federal district court wrote:

> Not only have Plaintiffs failed to provide the Court with factual support for their extraordinary claims, but they have wholly failed to establish that they have standing for the Court to consider them. Allegations that find favor in the public sphere of gossip and innuendo cannot be a substitute for earnest pleadings and procedure in federal court. They most certainly cannot be the basis for upending Arizona's 2020 General Election. The Court is left with no alternative but to dismiss this matter in its entirety.

*Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *16 (D. Ariz. Dec. 9, 2020). Neither the Trump Campaign's legal arguments nor its proof have improved with age or the change in geography. If anything, they have become even more strained and speculative.

Indeed, the Trump Campaign's extraordinary delay in filing this case itself provides ample reason to deny its motion for a preliminary injunction. In the November 3, 2020 election, New Mexico's voters chose President-elect Joe Biden and Vice President-elect Kamala Harris overwhelmingly in a race that President Trump lost by 11 percentage points. And the Trump Campaign did not even file its Complaint until December 14, 2020, the same day that New Mexico's duly-appointed slate of Presidential Electors met as part of the Electoral College and cast their votes in accordance with the will of New Mexico voters. The passage of time has accordingly rendered impossible the Trump Campaign's improbable and illogical request that the

2

Court undo or overturn an election that has already occurred and "stay" the vote of the Presidential Electors, which took place weeks ago.

In an order issued just yesterday dismissing a different, equally baseless and belated attempt to challenge the presidential election, yet another federal district court noted that the fact that the parties "waited until seven weeks after the election to bring this action," and failed to expeditiously take even basic steps plaintiffs would normally take in a legitimate, colorable case seeking emergency relief, "renders it difficult to believe that the suit is meant seriously." *Wisconsin Voters All. v. Vice President Michael R. Pence*, Case No. 20-3791 (JEB) (D.D.C. Jan. 4, 2021), slip op. at 6. This case, like the over *sixty* others that President Trump and his allies have brought (and lost) around the country, can be logically explained only as political theatre. But "Courts are not instruments through which parties engage in such gamesmanship or symbolic political gestures." *Id*. This Court should promptly put an end to this pageantry.

Not only does the Trump Campaign's inexcusable delay render this case moot and barred by laches, numerous other basic threshold issues preclude the Court from considering the matter, much less deciding it in the Trump Campaign's favor. But even if the Trump Campaign were able to clear these jurisdictional hurdles, it still could not succeed, both because of its striking lack of evidence and its failure to state a cognizable claim, as its request for injunctive relief is based on an affidavit from a failed state legislative candidate about her purported observations at a single drop box site for a few hours, and a discredited and superseded report about a *different* state, and a few uninformative photographs. Even if the Court were to accept this paltry and insubstantial "evidence" at face value, it shows, at most, that one drop box in one county may have been

3

unsupervised for a few hours, and that a few people might have delivered multiple ballots (which may have been lawful for immediate family members). On this basis, the Trump Campaign demands that the Court undo the entire election and "remand" the allocation of presidential electors to the New Mexico Legislature—in other words, disenfranchise hundreds of thousands of New Mexico voters who lawfully cast ballots in the presidential election.

There is no precedent for this extraordinary request for relief, and for good reason: it is antithetical to our most basic and cherished democratic principles, in which "[v]oters, not lawyers, choose the President" and "[b]allots, not briefs, decide elections." *Donald J. Trump for President*, 830 Fed. App'x at 391. This motion—and this lawsuit—are the death rattles of soon-to-be-former-President Trump's desperate and bottomless efforts to defy the will of the people and retain power through his evidence-free seditious quest to overturn an election he lost by more than seven million votes of the American people, and by seventy-four votes of the nation's presidential electors. Federal and State judges across the country have steadfastly held firm as bulwarks against this attempt to undercut the very foundations of our democracy. This Court should do the same.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background.[2]

Acting on express authority from the New Mexico Legislature and a Public Health Order issued by the Secretary of Health ("PHO"), on September 9, 2020, New Mexico's Secretary of State issued guidance regarding the use of secure drop boxes during the November general election

---

[2] The relevant facts are largely detailed in the DNC's Proposed Motion to Dismiss, *see* Doc. 12-1 at 3-8, and are incorporated by reference and only briefly summarized here.

to reduce the risk of COVID-19 transmission at polling places (the "Guidance"). On October 26, the Republican Party of New Mexico filed a lawsuit regarding the Guidance and the use of drop boxes, but then withdrew its complaint shortly thereafter. *See RPNM v. Oliver*, No. D-101-cv-2020-02344 (N.M. 1st Dist. Ct. Oct. 26, 2020).

More than 900,000 New Mexicans—including more than 300,000 absentee voters—voted in the November 3rd general election. President-elect Joe Biden and Vice President-elect Kamala Harris were the clear and unequivocal winners: they received a total of 501,614 votes (54.3%), nearly 100,00 more than the 401,894 (43.5%) cast for President Trump and Vice President Pence. After the election, following statutory procedures, each county canvassing board approved their vote tallies; the New Mexico Canvassing Board met to certify the State's official results; New Mexico delivered "to the Archivist of the United States a certificate of such ascertainment of the [presidential] electors appointed," prior to the "safe harbor" deadline of December 8, 2020, 3 U.S.C. § 6; and New Mexico's Presidential Electors met on December 14 to cast their ballots for Joe Biden and Kamala Harris, *see* 3 U.S.C. § 7, and "forward the certificates so made by them" to the parties required by federal law. *See* 3 U.S.C. §§ 9-10; *see also* N.M.S.A. § 1-15-5.[3]

---

[3] The United State Archives publishes photocopies of the states' finalized certificates of ascertainment and certificates of vote provided by the presidential electors. U.S. Archives, *Electoral College Results* (2020), https://www.archives.gov/electoral-college/2020. New Mexico's certificate shows that all five of its electoral votes were cast for President-elect Biden. U.S. Archives, *Electoral College Results* (2020), https://www.archives.gov/files/electoral-college/2020/vote-new-mexico.pdf.

**B.      Procedural History**

Although State law permits any candidate to request a recount or file an election contest, *see* N.M.S.A. 1978 §§ 1-14-1, 1-14-14, the Trump Campaign requested neither. Instead, it did nothing for nearly six weeks until, suddenly, on December 14, 2020—the same day the Presidential Electors met to cast their votes in the Electoral College—the Trump Campaign filed with this Court a single untitled pleading [Doc. 1, "Complaint/Motion"], in which it prayed for the Court to: (1) "issue a preliminary injunction or stay" against the Secretary of State and New Mexico's Electors to "delay disposition of certificates of votes for President and Vice President"; (2) alternatively, "vacate the Defendant Electors' certifications from the unconstitutional 2020 election results, and remand to the state of New Mexico legislature pursuant to 3 U.S.C. § 2 to appoint electors"; (3) "order Defendants to order a decree . . . in order to deliver the Defendant Electors' certificates of vote to Congress no later than 05 January 2020 in anticipation of the counting of votes by Congress on 06 January 2020 pursuant to 3 U.S.C. 15"; (4) "order Defendant Secretary Maggie Toulouse Oliver to coordinate and execute a statewide canvass of absentee votes and investigation of drop boxes . . . in order to deliver the Defendant Electors' certificates of vote to Congress no later than 05 January 2020"; and (5) "further order the invalidation of all results from whatever the smallest block of absentee ballots is that can be precisely matched to its election results — which could be as . . . large as an entire county of absentee votes." Am. Compl./Mot. at 39-42 ¶¶ A-E. The Complaint/Motion also purported to include an incorporated motion in which it demanded that this Court "enter an administrative stay and temporary restraining order ('TRO') to enjoin [Defendants] and all of their agents, officers, presidential electors, and others acting in

6

concert from taking action to have such electors take any official action – including without limitation participating in the disposition of certificates of votes for President and Vice President that would ordinarily be performed in accordance with 3 U.S.C. 11." *Id*. ¶ 4.

The following day, on December 15, 2020, this Court issued an Order finding "no grounds" to issue the requested TRO *ex parte* but setting an expedited briefing schedule for the Trump Campaign's request for a preliminary relief under which Defendants' response was due on December 24, 2020 [Doc. 3]. Two days before that deadline, the Trump Campaign filed a First Amended Motion for Preliminary Injunction and Temporary Restraining Order or, Alternatively, For Stay and Administrative Stay [Doc. 9, "Amended Complaint/Motion"] requesting the exact same relief as in the original Complaint/Motion (including the already-denied request for a TRO). Am. Compl./Mot. ¶¶ 1, A-E. The Amended Complaint/Motion differs only by including allegations related to Dominion voting machines, *id.* ¶¶ 12-19, which in turn refer to and rely on an attached affidavit of "Expert witness, Russell James Ramsland, Jr." [Doc. 9-1 "Ramsland Affidavit"]. The Ramsland Affidavit is dated November 24, 2020 and was originally filed in *King v. Whitmer*, No. 20-cv-13134-LVP-RSW (E.D. Mich. Nov. 25, 2020) (Doc. 1-14). As such, it discusses purported issues with Dominion voting machines *in Michigan*. It makes no mention of New Mexico, a fact that the Amended Complaint implicitly acknowledges by alleging only that "[t]he inaccuracies *presumably* existed in New Mexico[.]" Am. Compl./Mot. ¶ 12 (emphasis added). The only other new "evidence" included with the Amended Complaint/Motion is an unauthenticated and unexplained set of pictures—apparently screenshots from a security camera inside the Luna County Courthouse—that appear to show four people outside the courthouse on

October 8, 2020, along with text from an unknown source that purports to explain what the pictures show [Doc. 9-2]. The pictures show nothing remarkable; indeed, it is entirely unclear what, if anything, they have to do with voting or the election.

In response to the Amended Complaint/Motion, this Court entered an Order finding the original Complaint/Motion moot, vacating the expedited briefing schedule, and finding that "given Plaintiff's decision to amend rather than proceed with his original filing, there is no basis for an expedited briefing schedule" and that the briefing deadlines in the Local Rules shall apply to the Amended Motion [Doc. 17 ("Second Order")]. Under those rules, the Defendants' response is due January 5, 2020, and the Trump Campaign's reply is due two weeks later, on January 19, 2020.

Despite originally seeking an immediate temporary restraining order on an *ex parte* basis, and despite expressly praying, multiple times, that the Court grant relief "in order to deliver the Defendant Electors' certificates of vote to Congress no later than 05 January 2020," the Trump Campaign has not responded to the Second Order or otherwise made any effort to have this matter resolved on a more expedited basis. The U.S. Congress will meet tomorrow, January 6, 2021, to formally certify the presidential election results. 3 U.S.C. § 15.

### III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). For this reason, "the [movant's] right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (quotation marks omitted). The movant must generally show:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the

preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.

*Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). Because the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), mandatory preliminary injunctions and injunctions that alter the status quo are specifically disfavored, and motions seeking such injunctions—and their supporting evidence—"must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc)).

## IV.    ARGUMENT

The evidence submitted in support of the Trump Campaign's request for injunctive relief disenfranchising hundreds of thousands of New Mexico voters is utterly and woefully inadequate. In toto, it consists of (1) a recycled affidavit, previously filed in the withdrawn state court case, from Melissa Fryzel, a Republican candidate for state senate, who says she believes a single drop box was unattended for an unspecified amount of time during which she observed individuals depositing more than one ballot on two occasions [Doc. 1-4]; (2) an undated screen shot that shows an unidentified person holding what might be three ballots next to a drop box [Doc. 1-5]; (3) three photographs of entirely unknown provenance depicting four unknown people milling around outside the Luna County Courthouse [Doc. 9-2]; and (4) a discredited affidavit from a discredited

9

"expert" who claims to have found irregularities in voting machines used in one county in Michigan but makes no mention of New Mexico [Doc. 9-1].

On its face, this evidence is extraordinarily weak and provides no support for the Trump Campaign's claims. New Mexico law expressly *allows* voters to submit their ballots *and* those of their immediate family. N.M.S.A. 1978 § 1-6-10.1. There is *no* evidence that any of the voters described in Ms. Fryzel's affidavit, or the individual depicted in the photograph, were delivering ballots that had been voted by somebody other than immediate family members.

As for the Ramsland Affidavit, as noted, it relates to the presidential election in *Michigan*, not in New Mexico. *See supra* at 7. Perhaps even more remarkably, it includes and relies on data that Mr. Ramsland himself admitted was *wrong* in a subsequent court filing in the Michigan case for which the report was prepared [Doc. 9-1 ¶ 11]. *See* Expert Report of Russel James Ramsland, Jr., filed in *King v. Whitmer*, No. 20-cv-13134-LVP-RSW (E.D. Mich. Dec. 3, 2020), Doc. 49-3 at 13 ("Dr. Rodden was correct in his noting of excessive turnout figures listed in my affidavit . . . . Currently, new data published by the various counties does change."). Other attempts by litigants aligned with the President to rely on purported expert analysis by Mr. Ramsland have gone equally poorly. In Georgia, it led to a show cause order to an attorney who submitted a similar report by Mr. Ramsland, in part because the report contained "materially false information." *Page v. Oath, Inc*., No. S20C-07-030 CAK, Rule to Show Cause at 2 (Sup. Ct. Del. Dec. 18, 2020); *see also* Aaron Blake, *The Trump campaign's much-hyped affidavit features a big, glaring error*, WASHINGTON POST (Nov. 21, 2020) (discussing earlier version of Ramsland's affidavit in which he relied on data regarding voting jurisdictions in Minnesota, claiming they were from jurisdictions

in Michigan), *available at* https://www.washingtonpost.com/politics/2020/11/20/trump-campaigns-much-hyped-affidavit-features-big-glaring-error/.

The paucity of evidence is only part of the problem. Indeed, the Court need not even reach the merits because this case is moot and barred by laches. In addition, the Trump Campaign has failed to demonstrate that the Court would in any event have jurisdiction to hear and decide its claim: both the Eleventh Amendment and standing doctrine block its way. Nor has the Trump Campaign established any of the other required elements for a preliminary injunction—it will not suffer irreparable harm absent an injunction, and the equities and public interest overwhelmingly favor denying its motion. For these and similar reasons, courts have uniformly and correctly refused to issue similar injunctions in dozens of cases brought by the Trump Campaign and its allies attacking the results of the presidential election. *See, e.g.*, *Donald J. Trump for President*, 830 F. App'x at 390-91 (3d Cir. 2020); *Trump v. Biden*, --- N.W.2d ---, 2020 WL 7331907, at *7 (Wis. Dec. 14, 2020); *Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at *8 (N.D. Ga. Nov. 20, 2020), *aff'd*, No. 20-14418, 2020 WL 7094866 (11th Cir. Dec. 5, 2020); *Kelly v. Commonwealth*, 240 A.3d 1255, 1257 (Pa. 2020); *see also Feehan v. Wis. Elections Comm'n*, No. 20-CV-1771-PP, 2020 WL 7250219, at *18 (E.D. Wis. Dec. 9, 2020) ("Granting the relief the plaintiff requests would take the court far outside . . . the limits of its oath to uphold and defend the Constitution."). This Court should follow suit.

**A.     The Trump Campaign cannot succeed on the merits.**

A failure to show a likelihood of success on the merits alone is alone "sufficient to defeat" a motion for preliminary injunction. *Pence*, No. 20-3791 (JEB), Op. at 3 (D.D.C. Jan. 4, 2021). At

the outset, as discussed more fully in the DNC's Motion to Dismiss, the Trump Campaign cannot

succeed on the merits of its claims because they are moot and barred by laches, the Trump

Campaign lacks standing, and the Court lacks jurisdiction. Even if that were not the case, the

claims are woefully insufficient on the merits.[4]

### 1.      There is no live controversy.

The Trump Campaign's claims are plainly moot. The Trump Campaign asks this Court to

stay the disposition of New Mexico's Certificate of Vote, which has been endorsed by New

Mexico's five Presidential Electors, seeks orders directing officials to implement investigations of

drop box locations, and moves for the "invalidation of all of the results from whatever the smallest

block of absentee ballots is that can be precisely matched to its election results." [Doc. 9 ¶¶ A-E].

But the general election has been over for more than *two months* and there is no controversy left

for this Court to resolve or relief to give the Trump Campaign—"the ballots were cast; the votes

were counted; and the results were certified"; the people of New Mexico—and the Electoral

College—have spoken. *See King v. Whitmer*, --- F.Supp.3d ---, 2020 WL 7134198, at *7 (E.D.

Mich. Dec. 7, 2020); *see, e.g.*, *Wood v. Raffensperger*, 981 F.3d 1307, 1317 (11th Cir. 2020) ("[I]t

is not possible for us to delay certification nor meaningful to order a new recount when the results

are already final and certified."); *Bowyer*, 2020 WL 7238261, at *11-12 ("[T]his Court has no

power to de-certify the results . . . ."). The Trump Campaign incorrectly argues that post-election

deadlines are not "necessary" and suggests they are "modifiable" by an order of this Court. Am.

---

[4] Pursuant to D.N.M.LR-Civ. 7.1(a), the DNC incorporates by reference the arguments made in its Motion to Dismiss [Doc. 12-1], summarizing rather than restating them here.

Compl./Mot. ¶ 49. Beyond being entirely devoid of support, these arguments "reflect a basic misunderstanding of what mootness is." *Wood*, 981 F.3d at 1317. As the 11th Circuit recently explained in an order denying similarly-requested post-election relief, "mootness concerns the availability of relief," and the court "'cannot turn back the clock and create a world in which' the 2020 election results are not certified." *Id.* (quoting *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015)).

### 2.    The Trump Campaign's claims are barred by laches.

Separately, the Trump Campaign's claims are at this point clearly barred by laches; indeed, "[t]he rationale for interposing the doctrine of laches is now at its peak." *Bowyer*, 2020 WL 7238261, at *7. Both elements of laches—"inexcusable delay in instituting a suit" and "resulting prejudice," *Kadonsky v. United States*, 3 F. App'x 898, 904 (10th Cir. 2001) (citations omitted)— are "unquestionably met." *Bowyer*, 2020 WL 7238261 at *11. The Trump Campaign provides no excuse for its extraordinary delay in filing this case, nor for its unilateral decision to further delay proceedings by filing, a mere two days before the due date for the Defendants' response to the request for emergency, the Amended Motion/Complaint, which added nothing that could not have been pled earlier. And when the Court found that, "given Plaintiff's decision to amend rather than proceed with his original filing, there is no basis for an expedited briefing schedule," and struck its previously expedited schedule in favor of the default schedule under the local rules [Doc. 17], the Trump Campaign continued to do nothing. "The want of due diligence demonstrated in this matter is unmistakable[,]" *Kelly*, 240 A.3d at 1256, and the Trump Campaign's delay is "inexcusable." *Bowyer*, 2020 WL 7238261 at *10 ("When contesting an election, any delay is

prejudicial, but waiting until a month after Election Day and two days after certification of the election is inexcusable.").

The resulting prejudice to Defendants and voters alike is indisputably severe. *Trump v. Biden*, 2020 WL 7331907 at ¶ 12 (finding Trump Campaign's delay in raising claims "was unreasonable in the extreme, and the resulting prejudice . . . obvious and immense."); *Trump v. Wisconsin Elections Comm'n* ("*WEC*"), No. 20-3414, 2020 WL 7654295, at \*4 (7th Cir. Dec. 24, 2020) ("Allowing the President to raise his arguments, at this late date, after Wisconsin has tallied the votes and certified the election outcome, would impose unquestionable harm on the defendants, and the State's voters," particularly where "[t]he President had a full opportunity before the election to press the[se] very challenges."); *Bowyer*, 2020 WL 7238261, at \*10 ("[T]he prejudice is especially so considering that Plaintiffs' claims for relief are not merely last-minute—they are after the fact. While Plaintiffs delayed, the ballots were cast; the votes were counted; and the results were certified.") (quoting *King*, 2020 WL 7134198, at \*7). The Trump Campaign's claims are now plainly barred by laches.

### 3. The Court lacks jurisdiction.

Even if the Trump Campaign had not so inexcusably and prejudicially delayed in taking action in this case, the Court could not decide this matter because it lacks jurisdiction for at least three reasons. First, the Trump Campaign lacks standing to pursue these claims. Second, under New Mexico law an election contest (which this indisputably is) must be brought in state court, and federal courts "may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts." *Wood*, 981 F.3d at 1310.

Third, sovereign immunity bars the Trump Campaign's claims. The first two jurisdictional issues are addressed in the DNC's Motion to Dismiss, which is incorporated by reference. *See* Doc. 12-1 at 13-21. The DNC briefly addresses the third hurdle, which independently bars the Trump Campaign's request for relief, below.

The Eleventh Amendment bar on federal court lawsuits against states extends to state officials if "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citation omitted). Though the Trump Campaign's lawsuit is nominally filed against state officials, New Mexico is the real party in interest because the effect of a favorable judgment would be to "compel [the State] to act"—specifically by invalidating its election results. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963). And because this lawsuit challenges Defendants' alleged violation of state election laws, it is squarely barred by the Eleventh Amendment. *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995); *see also Bowyer*, 2020 WL 7238261, at *8 ("where the claims are state law claims, masked as federal law claims, *Ex parte Young* is inapplicable and the Eleventh Amendment clearly bars the suit").

The three exceptions to the sovereign immunity bar—"(1) Congress has abrogated the immunity within a federal statute; (2) the State has waived immunity and allowed individuals to sue it pursuant to specific state statutes; and (3) in 'claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law,'" *id.*, quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016)—are inapplicable here.

*First*, the Trump Campaign's only claim purports to arise under the Electors Clause, but there is no authority indicating that the Electors Clause grants Congress the power to abrogate the States' sovereign immunity; and even so, there is no clear intent by Congress to do so. *See Seminole Tribe of Fla. v. Fla*., 517 U.S. 44, 47 (1996).

*Second*, New Mexico has not unequivocally waived its Eleventh Amendment immunity or consented to suit in federal court. *Johns*, 57 F.3d at 1553 (holding "a state may waive its Eleventh Amendment immunity 'only where stated 'by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room for any other reasonable construction.'" (citation omitted)).

*Third*, *Ex parte Young* does not apply because "[t]here is no continuing violation to enjoin." *King*, 2020 WL 7134198, at *5. Though nominally seeking to "delay disposition of certificates of votes for President and Vice President," those actions have already occurred; indeed, the Defendants have already done everything there is for them to do in connection with the presidential election of 2020, so there is nothing left to enjoin. The allegations target past alleged violations and do not assert any ongoing federal violations beyond this one election, which is long over. *Johns*, 57 F.3d at 1553 ("The Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993)). The Trump Campaign is simply "seeking to undo what has already occurred." *King*, 2020 WL 7134198 at *5 ("Before this lawsuit was filed, the Michigan Board of State Canvassers had already certified the election results and Governor Whitmer had transmitted the State's slate of electors to the United States Archivist."). The relief

requested "seeks to alter past conduct"; as a result, "[t]he Eleventh Amendment bars the injunctive relief sought." *Bowyer*, 2020 WL 7238261 at *9.

### 4. The Trump Campaign cannot succeed on the merits of its Electors Clause claim.

Even if the Trump Campaign could somehow overcome the myriad procedural, equitable, and jurisdictional defects, it cannot come close to making the requisite "strong showing" that it can prove its merits case. Its entire case appears to be premised on a claim that the Secretary of State usurped the legislature's Electors Clause authority by issuing drop box guidance that the Trump Campaign thinks is unlawful. But this claim fails as a matter of law under any theory.

The Electors Clause provides that the New Mexico Legislature has the authority to determine the "Manner" in which the state shall "appoint" its presidential electors. *See* U.S. Const. art. II, § 1, cl. 2. New Mexico, like other states, has chosen a popular general election. N.M.S.A. § 1-15-4. Because the Secretary's Guidance in no way disturbed this "Manner" of choosing electors, there is no Electors Clause violation. *See WEC*, 2020 WL 7318940, at *12 ("complaints about [election] guidance on . . . the use of absentee ballot drop boxes . . . are not challenges to the 'Manner' of Wisconsin's appointment of Presidential Electors; they are disagreements over election administration"), *aff'd*, No. 20-3414, 2020 WL 7654295 (7th Cir. Dec. 24, 2020); *see also, e.g.*, *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 807 (2015) (noting Elections Clause does not preclude "the State's choice to include" state officials in lawmaking functions so long as such involvement is "in accordance with the method which the State has

17

prescribed for legislative enactments") (quoting *Smiley v. Holm*, 285 U.S. 355, 367 (1932)).[5] Here, the Secretary of State, New Mexico's chief elections official, was not only assigned by the Legislature the responsibility for "obtain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of the Election Code," N.M.S.A. 1978 § 1-2-1(B)(1), when she issued the Guidance, she was also acting under express legislative authority to take steps to help reduce the number of people within polling places. *See* N.M.S.A. § 1-12-72(O). The Electors Clause claim thus fails because "whatever actions the [Secretary] took here, [she] took under color of authority expressly granted to it by the Legislature. And that authority is not diminished by allegations that the [Secretary] erred in its exercise." *WEC*, 2020 WL 7654295, at *4.

Even if the Court were to dig further into the "isolated section" of the New Mexico Election Code in search of an Electors Clause violation, *but see supra* at n.5, it would find that the Secretary's actions and Guidance were entirely consistent with the Code. The New Mexico Legislature expressly *mandated* that the Secretary take steps to limit the number of voters in a polling location if the Secretary of Health issued an order regarding the administration of the 2020 Election. N.M.S.A. § 1-12-72(O). When the Secretary of Health did just that, the Secretary of State

---

[5] As the 7th Circuit recently recognized, complaints like the Trump Campaign's fail as a matter of law even if courts were to take a "broader" reading of the Electors Clause. Specifically, even if the "Manner" of appointing electors for purposes of an Electors Clause claim encompassed "acts necessarily antecedent and subsidiary to the method for appointing electors," or, in other words, the "conduct of [the state's] general election," courts would ask whether "the state conducted the election in a manner substantially consistent with the 'legislative scheme' for appointing electors. *WEC*, 2020 WL 7654295, at *4 (citing *Bush v. Gore*, 531 U.S. 98, 113, 121 (2000) (Rehnquist, C.J., concurring). Courts should not "go further and ask, for example, whether [New Mexico's] officials interpreted perfectly 'isolated sections' of the elections code." *Id.* (quoting *Bush*, 531 U.S. at 114 (Rehnquist, C.J., concurring).

was in turn required to "implement changes," *id.*, and she accordingly determined that ballot drop boxes present "a secure, convenient alternative for voters to cast their completed mail ballots while ensuring they are received by the deadline." Guidance at 1.[6]

*   *   *

Because it waited far too long, because it lacks standing and this Court lacks jurisdiction, because the Eleventh Amendment bars the claims, and—most importantly—because its breathtaking request to invalidate hundreds of thousands of votes is legally specious and premised on no credible or useful evidence, the Trump Campaign has not made the required strong showing that it is likely to succeed on the merits. As with each of the other meritless and unsuccessful suits the Trump Campaign and its allies have brought in an attempt to invalidate the 2020 presidential election, it "cannot win this lawsuit." *Donald J. Trump for President*, 830 F. App'x at 390.

## B.    The Trump Campaign has not demonstrated irreparable harm.

The Trump Campaign's failure to establish that it will suffer irreparable harm if its motion for injunctive relief is not granted independently bars its requested relief. "The absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017). And because the 'irreparable injury' inquiry is linked to the 'likelihood of success' inquiry, "a

---

[6] Even if the Trump Campaign *could* prove that the Guidance was unlawful, there would be no legal basis under state law to invalidate ballots as a remedy. The New Mexico Supreme Court has held that where "any reasonable construction of the statute can be found which will avoid [wholesale disenfranchisement of qualified electors through no fault of their own], the Courts should and will favor it." *Darr v. Vill. of Tularosa*, 962 P.2d 640, 645 (N.M. 1998) (affirming reasoning in *Orchard v. Bd. Of Comm'rs of Sierra Cnty.*, 76 P.2d 41, 51 (N.M. 1938)).

19

plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1030 (D.N.M. 2016) (citing *Schrier*, 427 F.3d at 1266).

As the Third Circuit recently emphasized in holding that the Trump Campaign had failed to demonstrate an irreparable injury stemming from the President's loss in Pennsylvania, courts "will not extrapolate from" thin factual allegations and "modest numbers to postulate that the number of affected ballots comes close to the certified margin of victory of 80,555 votes." *Donald J. Trump for President*, 830 F. App'x at 390. The margin of victory at issue in this case is even more insurmountable, both in absolute numbers and, especially, as a proportion of the total vote. The Trump Campaign cannot be injured by a denial of relief because there are no allegations (let alone evidence) that could undo the 99,720-vote (11%) differential that decided the presidential election here in New Mexico.

The Trump Campaign does not even attempt to make the case that a different outcome would be possible. Instead, its one-paragraph argument for irreparable harm asserts that the Trump Campaign and New Mexico voters would be irreparably harmed "by denying representation in the presidency and in the Senate in the near term and by permanently sowing distrust in federal elections." [Doc. 9 ¶ 100]. The first claim, about denial of representation, is especially baffling considering the lack of any allegation that Donald Trump and Mike Pence actually received more votes than the President and Vice President-elects in New Mexico. It is the Trump Campaign's requested relief that would *cause* irreparable injury by disenfranchising hundreds of thousands of New Mexico voters. *See infra*, Section IV-C. The second claim, about "sowing distrust," is equally

20

misplaced. This case is part and parcel of the baseless yet months-long concerted effort by President Trump and his allies to undermine faith in the presidential election in aid of their attempted subversion of democracy. It is President Trump, the Trump Campaign, and their allies who are sowing distrust through their numerous spurious lawsuits, and the public interest in democracy is furthered by firmly and unequivocally rejecting their claims: "Democracy depends on counting all lawful votes promptly and finally, not setting them aside without weighty proof. The public must have confidence that our Government honors and respects their votes." *Donald J. Trump for President*, 830 F. App'x at 390-91.

The Trump Campaign's inexcusable delay in bringing suit also strongly undermines its claim of irreparable harm and its claim of entitlement to "emergency" relief. *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984); *see also* Wright & Miller, 11A Federal Practice and Procedure, § 2948.1 (3d ed., Apr. 2017 update) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). The allegations all relate to issues that were known on or before Election Day. Yet the Trump Campaign waited nearly six weeks to file this lawsuit, long after the vote count had been certified, and even after the Electoral College had finalized Joe Biden's victory. The Trump Campaign then waited yet another week before amending its initial pleadings, adding as "evidence" only photographs dated October 8 and a discredited report dated November 24. *See* Docs. 9-1, 9-2. Indeed, the Amended Complaint/Motion's additional allegations refer generally to New Mexico's use of Dominion Voting Systems—but rely only on purported irregularities in the machines used in Michigan—and are based on facts asserted in

unsuccessful lawsuits brought weeks before this one. *See, e.g.*, Compl., *King v. Whitmer*, No. 20-cv-13134-LVP-RSW (E.D. Mich. Nov. 25, 2020); Compl., *Trump v. Benson*, No. 20-cv-1083 (W.D. Mich. Nov. 11, 2020); Complaint, *Pearson v. Kemp*, No. 20-cv-04809 (N.D. Ga. Nov. 25, 2020). There is no reason why the Trump Campaign could not have brought this lawsuit sooner; in fact, it and its advocates brought dozens of virtually identical (and ultimately unsuccessful) lawsuits seeking similar relief before and immediately after the election.[7]

Adding to its equitable delinquencies and further militating against a finding of irreparable harm, the Trump Campaign had, but failed to pursue, an adequate remedy at law. *See Donald J. Trump for President*, 830 F. App'x at 390 ("Because the Campaign can raise these issues and seek relief through state courts and then the U.S. Supreme Court, any harm may not be irreparable.");

───────────────────

[7] *See, e.g.*, *Donald J. Trump for President, Inc. v. Benson*, Opinion & Order, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 6, 2020) (denying Trump Campaign's emergency motion to cease all counting and processing of absentee ballots and noting plaintiffs provided no admissible evidence supporting their claims); *Donald J. Trump for President Inc. v. Phila. Cnty. Bd. of Elections*, No. 2:20-CV-05533-PD, Doc. 5 (E.D. Pa. Nov. 5, 2020) (denying Trump Campaign's emergency motion to stop Philadelphia County Board of Elections from counting ballots); *Kraus v. Cegavske*, Order at 9, No. 20-OC-00142 (Nev. Dist. Ct. Oct. 29, 2020) (finding Trump Campaign's allegation that observers were not able to observe the process or allegation that Nevada's signature matching process was unreliable to be without merit, and explaining "[t]here is no evidence that any vote that should lawfully not be counted has been or will be counted" and "[t]here is no evidence that any election worker did anything outside of the law, policy, or procedures"), *aff'd*, No. 82018 (Nev. Nov. 3, 2020) ("[Appellants'] request for relief to this court is not supported by affidavit or record materials supporting many of the factual statements made therein . . . It is unclear from the motion how appellants are being prevented from observing the process."); *In re: Enforcement of Election Laws and Securing Ballots Cast or Received After 7:00 P.M. on Nov. 3, 2020*, No. SPCV2000982-J3 (Ga. Sup. Ct., Nov. 5, 2020) (denying Trump Campaign's petition to segregate certain ballots and noting "there is no evidence the ballots referenced in the petition [were invalid]" and "there is no evidence that the Chatham County Board of Elections or the Chatham County Board of Registrars has failed to comply with the law").

22

*United States v. Bacon*, 900 F.3d 1234, 1238 (10th Cir. 2018) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law . . . ") (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992)). The Legislature created specific mechanisms to dispute election results, including recount and election contest procedures. *See* N.M.S.A. §§ 1-14-1, 1-14-14. Because the Trump Campaign could have, but chose not to, utilize these procedures to seek the relief it now asks from this Court, it cannot now claim its "harm" is "irreparable" in this Court. *Donald J. Trump for President*, 830 F. App'x at 390. To the extent that the Trump Campaign contends that it *no longer* has an adequate remedy under law, it cannot now benefit by using its own failure to invoke those procedures. *WEC*, 2020 WL 7654295, at *4 ("The President had a full opportunity before the election to press the very challenges to law underlying his present claims. Having foregone that opportunity, he cannot now—after the election results have been certified as final—seek to bring those challenges.").

**C.    The balance of the equities and the public interest overwhelmingly favor denying the request for injunctive relief.**

The balance of equities overwhelmingly favors denying injunctive relief. Indeed, "[i]t would be more difficult to envision a case in which the balance of hardships would tip more strongly against a plaintiff." *Bowyer*, 2020 WL 7238261, at *15 (quoting and agreeing with defendant's statement). Far beyond just burdening the parties to this lawsuit, the Trump Campaign's outrageous requests would wreak havoc on New Mexico's elections processes and violate the constitutional rights of hundreds of thousands of voters, all while undermining public confidence and trust in the election's results. Simply put, "[t]he balance of equities opposes disenfranchising voters." *Donald J. Trump for President*, 830 F. App'x at 390. Yet, the Trump

23

Campaign seeks to set aside hundreds of thousands of votes, and "[a]s the deadline to certify votes has already passed, granting relief would disenfranchise those voters or sidestep the expressed will of the people." *Id*.

The Trump Campaign's requested relief would also be contrary to the public interest, which is to have all lawful votes counted "promptly and finally, not setting them aside without weighty proof." *Id*. It would also violate the longstanding fundamental right of New Mexicans to have their votes counted under the U.S. and New Mexico constitutions. *See United States v. Classic*, 313 U.S. 299, 315 (1941) ("Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted . . . "); *Darr*, 962 P.2d at 645 ("Where any reasonable construction of the statute can be found which will avoid wholesale disenfranchisement . . . Courts should and will favor it.").

## V.    CONCLUSION

The Court should deny Plaintiffs' motion for preliminary injunctive relief.

Dated: January 5, 2020                    Respectfully submitted,

                                          /s/___Paul Melendres_____
                                          Paul Melendres #12399
                                          Melissa Calderon #141511
                                          MELENDRES & MELENDRES PC
                                          1017 5TH Street NW
                                          Albuquerque, NM 87102
                                          Telephone: (505) 243-8310
                                          paul@melendreslaw.com
                                          melissa@melendreslaw.com

                                          Marc E. Elias
                                          Emily Brailey
                                          PERKINS COIE LLP
                                          700 Thirteenth Street NW, Suite 800
                                          Washington, DC 20005
                                          Telephone: (202) 654-6200
                                          MElias@perkinscoie.com
                                          EBrailey@perkinscoie.com

                                          Matthew P. Gordon
                                          PERKINS COIE LLP
                                          1201 Third Avenue, Suite 4900
                                          Seattle, WA 98101-3099
                                          Telephone: (206) 359-8000
                                          MGordon@perkinscoie.com

                                          Torryn Taylor Rodgers
                                          PERKINS COIE LLP
                                          505 Howard Street, Suite 1000
                                          San Francisco, CA 94105
                                          Telephone: (415) 344-7000
                                          TRodgers@perkinscoie.com

                                          *Counsel for Proposed Intervenor-Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: January 5, 2020.                              Respectfully submitted,

*/s/ Paul Melendres*