# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DONALD J. TRUMP FOR PRESIDENT, INC.,

    Plaintiff,

vs.

Case No. 20-cv-1289 MV

MAGGIE TOULOUSE OLIVER, in her official
capacity as Secretary of State of New Mexico,
the ELECTORS of NEW MEXICO and the STATE
CANVASSING BOARD OF NEW MEXICO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the DNC's Motion to Intervene as Defendants and Memorandum of Law in Support [Doc. 12]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be granted.

## BACKGROUND

In response to the COVID-19 pandemic, in May 2020, the New Mexico Legislature passed legislation to regulate the conduct of the 2020 general election, providing that "the secretary of state shall, in consultation with each county clerk in an area identified in the public health order, implement changes in the conduct of the 2020 general election only to extent necessary for the preservation of [] health and safety." N.M. Stat. Ann. § 1-12-72(O). In accordance with that legislation, in early September, the New Mexico Department of Health issued a Public Health Order ("PHO") permitting "election-related facilities to operate subject to certain requirements designed to mitigate the risk of spreading COVID-19 through in-person voting," and directing the Secretary to implement social distancing protocols and "provide

additional guidance to facilitate and ensure compliance with such protocols to limit the amount of voters in a polling location at one time." *See* PHO of N.M. Dep't of Health Cabinet Sec'y, *Public Health Emergency Order Clarifying that Polling Places Shall be Open as Required in the Election Code and Imposing Certain Social Distancing Restrictions on Polling Places* (Sept. 3, 2020). And in accordance with the PHO, a few days later, the Secretary issued "Standards and Guidance" encouraging the use of drop boxes by New Mexico's County Clerks as a means of reducing congestion at in-person polling locations and "to support the health and safety of those communities impacted by the global pandemic." N.M. Sec'y of State General Election 2020 Drop Box Standards and Guidance 1 (Sept. 9, 2020) ("Guidance").

The November 3, 2020 general election proceeded as planned, and in accordance with New Mexico law, each county canvassing board approved their vote tallies and issued certificates of canvass to the Secretary. *See* N.M. Stat. Ann. §§ 1-13-13-15. Joe Biden and Kamala Harris received 501,614 votes for President and Vice President; Donald Trump and Mike Pence received 401,894 votes.

On December 14, 2020, the Electoral College met to cast ballots for President and Vice President. All of New Mexico's Electors cast their ballots for and formally elected Joe Biden and Kamala Harris. That same day, Plaintiff Donald Trump for President, Inc. commenced the instant action against Secretary of State Maggie Toulouse Oliver, the Electors of New Mexico, and the State Canvassing Board of New Mexico. Doc. 1. Thereafter, on December 22, 2020, Plaintiff filed its First Amended Motion for Preliminary Injunction and Temporary Restraining Order, or, Alternatively, for Stay and Administrative Stay ("Amended Motion"). Doc. 9. In the Amended Motion, Plaintiff asks the Court to enjoin the "disposition of certificates of votes for President and Vice President . . . until the conclusion of this case on the merits," or alternatively, to "vacate the Defendant Electors' certifications . . . and remand to the state of New Mexico

legislature pursuant to 3 U.S.C. § 2 to appoint electors." *Id.* at 44-45. Plaintiff further seeks a "decree mandating" a "statewide canvass of absentee votes and investigation of drop boxes" involving public submission of evidence and various other extra-statutory procedures, and ultimately the "invalidation of all results from whatever the smallest block of absentee ballots is that can be precisely matched to its election results." *Id.*

On the same day that Plaintiff filed its Amended Motion, the DNC Services Corporation/Democratic National Committee (the "DNC") filed the instant motion to intervene in this action as a defendant as a matter of right or, alternatively, to permissively intervene ("DNC's Motion"). Defendants do not object to the DNC's Motion, but Plaintiff has filed a response in opposition thereto.

## DISCUSSION

The DNC is a national committee dedicated to electing local, state, and national candidates of the Democratic Party, including President-Elect Biden and Vice President-Elect Harris, to public office throughout the United States. Doc. 12 at 1. Among the DNC's members and constituents are eligible absentee voters in New Mexico who voted in the November general election. *Id.* The DNC argues that, given Plaintiff's effort "to disenfranchise" those voters, the DNC has a clear protectable interest in the outcome of this litigation, and thus should be permitted to intervene. *Id.* at 4. The Court agrees.

I. <u>The DNC need not establish standing.</u>

As an initial matter, Plaintiff argues that the DNC lacks Article III standing to intervene in this action. Doc. 29 at 3-7. As Plaintiff appears to concede, however, "an intervenor as of right must meet the requirements of Article III [only] if the intervenor wishes to pursue relief not requested by an existing party." *Kane Cty. v. United States*, 928 F.3d 877, 886 (10th Cir. 2019).

The DNC has represented that it does not seek relief different from Defendants. Doc. 12 at 4 n.2. Accordingly, the DNC need not establish Article III standing in order to intervene in this action.

II.     The DNC is entitled to intervene as a matter of right.

In relevant part, Rule 24(a) of the Federal Rules of Civil Procedure provides that, on a "timely motion . . . the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Under Tenth Circuit precedent, a nonparty seeking to intervene as of right under Rule 24(a)(2) must establish the following four elements: "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty.*, 928 F.3d at 889. Plaintiff does not contest the timeliness of the DNC's Motion, but argues that the DNC has failed to establish the remaining elements essential to its right to intervene.

    A.      The DNC has a significant protectible interest in the outcome of this litigation.

"To meet the interest requirement, an applicant must have an interest that could be adversely affected by the regulation." *Kane Cty.*, 928 F.3d at 891 (citation omitted). The Court is tasked with applying "practical judgment when determining whether the strength of the interest [] justif[ies] intervention." *Id.* (citation omitted).

Here, the DNC argues that its interest in this case is to ensure that the ballots submitted by the voters of New Mexico, including by the DNC's members, constituents, and those who support its candidates, remain valid. Doc. 12 at 6-7. According to the DNC, if the relief that Plaintiff seeks were granted, votes for DNC-supported candidates would be lost, its members and constituents would be effectively disenfranchised, and the DNC would be forced to expend

significant resources to defend against Plaintiff's proposed procedures to scrutinize already-certified ballots.  *Id.*  "[S]uch interests are routinely found to constitute significant protectable interests."  *Issa v. Newsom*, No. 20-cv-1044, 2020 WL 3074351, at \*3 (E.D. Cal. Jun. 10, 2020) (citing *Paher v. Cegavske*, No. 20-cv-243, 2020 WL 2042365, at \*2 (D. Nev. Apr. 28, 2020) (holding that Democratic Congressional Campaign Committee and Democratic Party of California sufficiently showed "significant protectable interests which would be impaired by Plaintiffs' challenge to the Plan's all-mail election provisions")).

Inexplicably and without any authority, Plaintiff argues that the "DNC has no direct interest in the voters of New Mexico" or in the votes of its own "members and constituents." Doc. 29 at 11.  Even more inexplicably, Plaintiff asserts that "none of the Proposed Intervenors" is involved in "the administration or monitoring of elections" because "they" are not "the county boards of elections, *political parties*, or candidates."  *Id.* (emphasis added).  The only proposed intervenor here, however, is the DNC, the national committee dedicated to electing local, state, and national candidates of *the Democratic Party*.  Thus, by its own contention, Plaintiff appears to concede that the DNC has a protectable interest in the outcome of this litigation.  Plaintiff goes on to discuss an issue wholly inapposite to the instant case, namely whether the "Proposed Intervenors have any authority under the New Mexico Election Code to appoint poll watchers or otherwise monitor elections."  *Id.*  As this case involves neither poll watching nor monitoring of an election that has yet to take place, Plaintiff's statements lend no support to its argument that the DNC fails to meet the requirement of establishing that its interest in this case could be adversely affected by the litigation.

Applying its practical judgment, the Court finds that because the potential risk of injury to the votes for the DNC's candidates and by its members is great if Plaintiff is successful, the

DNC has met its burden of demonstrating a protectible interest in the litigation for purposes of intervention as of right.

      B.     <u>The DNC's interest may be impaired by the litigation.</u>

"Establishing the potential impairment of [a protectable] interest presents a minimal burden, and such impairment may be contingent upon the outcome of litigation." *Kane Cty.*, 928 F.3d at 891 (citation omitted). As with the first element, the Court applies its "practical judgment" in determining whether "the potential risk of injury" to a protectable interest "justif[ies] intervention." *Id.* (citation omitted).

The DNC argues that the relief requested by Plaintiff would not only "burden DNC's voters" but also "completely disenfranchise" them, and that "because the DNC and its members would otherwise lack an opportunity to prevent these 'adverse' effects, this prong of the standard for intervention is satisfied." Doc. 12 at 9. Such potential risk of injury has routinely been found to constitute impairment justifying intervention. *See Issa,* 2020 WL 3074351, at *3; *Paher*, 2020 WL 2042365, at *2.

Plaintiff argues that because the DNC lacks a protectable interest in this litigation, it follows that the DNC cannot prove the requisite impairment to justify intervention. Doc. 20 at 12. This argument fails, however, because the Court has found that the DNC indeed has a protectable interest in this litigation. Plaintiff goes on to misstate, somewhat unintelligibly, the DNC's argument, indicating that the DNC asserts "only an alleged impairment of what they [sic] believe the General Assembly should have permitted in terms of mail-in voting, which Plaintiffs [sic] contend the General Assembly has not enacted." *Id.* And without any support, Plaintiff dubiously concludes that "impairment does not exist when the relief sought is merely the enforcement of the laws as written." *Id.* Plaintiff's unrelated and unsupported contentions are unavailing.

Applying its practical judgment, the Court finds that the DNC has met its minimal burden of establishing that the potential risk of injury to its protectable interest, namely, ensuring that ballots submitted by the voters of New Mexico remain valid, justifies intervention.

    C.       <u>Defendants may not adequately represent the DNC's interest.</u>

Finally, the DNC "must show that existing parties may not adequately represent its interest." *Kane Cty.*, 928 F.3d at 892. "This burden is minimal, and it is enough to show that the representation may be inadequate." *Id.* (citation omitted). The Tenth Circuit has explained that, [w]hen a would-be intervenor's and the representative party's interest are identical," the Court "presume[s] adequate representation." *Id.* (citation omitted). Notably, however, "where the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, this presumption can be rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." *Id.* (citation omitted).

Here, the DNC argues that the named Defendants do not adequately represent the DNC's interests because "the Secretary and the State Canvassing Board's stakes in this lawsuit are defined solely by their statutory duties to conduct elections," and "the Electors' duties, as they relate to this lawsuit, are mandatory and likewise defined by federal and state law." Doc. 12 at 10. In contrast, the DNC's interests "are to ensure that the votes for its candidates for President and Vice President remain effective and to protect its members from disenfranchisement." *Id*. Thus, although Defendants and the DNC "fall on the same side of the dispute," their interests in defending against Plaintiff's requested relief differ. *See Issa*, 2020 WL 3074351, at *3 ("While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming

federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures.").

In arguing that the DNC has not made a sufficient showing on this element, Plaintiff relies on cases from the Third Circuit, see Doc. 29 at 14, ignoring Tenth Circuit precedent that clearly holds, as described above, that the presumption of adequate representation is rebutted where the named defendants are governmental entities, as they are here, and the would-be intervenor demonstrates that "the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," as the DNC has done here. *Kane Cty.*, 928 F.3d at 892. Further, Plaintiff again appears to misstate the subject matter of this litigation and the parties' various positions, stating that "both [sic] Defendant Secretary advocated for the use of drop-boxes and other collection sites and the other casting and counting procedures *sought* by the Proposed Intervenors," who "have offered no evidence that these Defendants intend to change their position on these procedures and practices for the *upcoming* General Election." Doc. 29 at 15 (emphasis added). Plaintiff's argument as the adequacy of representation thus is rooted in neither the law nor the facts.

The Court finds that the DNC has met its minimal burden of establishing that the named Defendants may not adequately represent its interest in this litigation.

Because the DNC thus has satisfied each of the elements essential to intervene as of right, the DNC's Rule 24(a)(2) motion shall be granted. Because the DNC shall be permitted to intervene as of right, the Court need not reach the DNC's argument in the alternative that it be entitled to permissive intervention.

## CONCLUSION

For the foregoing reasons, the DNC shall be permitted to intervene in this matter as of right in this action pursuant to Rule 24(a)(2).

**IT IS THEREFORE ORDERED** that the DNC's Motion to Intervene as Defendants and Memorandum of Law in Support [Doc. 12] is **GRANTED**.

**IT IS FURTHER ORDERED** that if the DNC wishes to pursue its proposed motion to dismiss, which is attached as an exhibit to the DNC's Motion, it must file the motion to dismiss as a separate document.

DATED this 8th day of January 2021.

_____
MARTHA VÁZQUEZ
United States District Judge